UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD

SHAUN TAYLOR,
                    Appellant,

                    v.

OFFICE OF PERSONNEL
    MANAGEMENT,
                    Agency.

DOCKET NUMBER
CH-844E-19-0004-I-1

DATE: February 27, 2023

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Leah Bachmeyer Kille, Esquire, Lexington, Kentucky, for the appellant.

Linnette L. Scott, Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

**FINAL ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which affirmed the reconsideration decision by the Office of Personnel Management (OPM) denying the appellant's application for a Federal Employees' Retirement System (FERS) disability retirement annuity. For the reasons discussed below,

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

we GRANT the appellant's petition for review, REVERSE the initial decision and OPM's reconsideration decision, and ORDER OPM to award a disability retirement annuity to the appellant.

## BACKGROUND

¶2       The appellant began working with the U.S. Postal Service (USPS) in 2011 and was converted to a career position covered by FERS in 2014.  Initial Appeal File (IAF), Tab 7 at 79, 91.  He was promoted to a Manager of Distribution Operations (MDO) position in June 2016.  *Id.* at 79-80.  His duties as an MDO involved managing a small- to medium-sized group of employees, meeting with customers and major mailers, managing on-the-job training, resolving union disagreements, and monitoring operational performance.  *Id.* at 72.

¶3       In June 2012, the appellant was diagnosed with anxiety, depression, and attention deficit disorder (ADD).  IAF, Tab 17 at 7.  In 2014, he submitted a medical certification of his own serious health condition under the Family and Medical Leave Act, completed by his treating psychiatrist.  *Id.* at 8-12.  The psychiatrist stated that the appellant would need to be absent from work during monthly "episodic flare-ups" for 1-2 days per episode, noting that the appellant "can be non-functional due to anxiety or depression."  *Id.* at 10.  However, at that time in 2014, his doctor checked "no" when asked whether the appellant was unable to perform any of his job functions due to the condition.  *Id.* at 9.

¶4       According to the psychiatrist, the appellant "got worse" in March 2017, and, in addition to maintaining his diagnoses of anxiety, depression, and ADD, the doctor diagnosed the appellant with "probable Borderline Personality Disorder."  *Id.* at 17, 19.  Also in March 2017, the appellant requested to be reassigned from his management position "back into craft as a Clerk or a Mail Handler."  *Id.* at 14.  The USPS denied this request, citing current excessing of the Clerks and Mail Handlers.  IAF, Tab 7 at 60.

¶5    The appellant applied for a FERS disability retirement annuity in August 2017. IAF, Tab 7 at 80-83. In March 2018, OPM issued an initial decision denying his application, finding that he was not disabled within the meaning of retirement law. *Id.* at 47-51. He requested reconsideration of this decision and included various medical documents and statements from his psychiatrist. *Id.* at 16-41. In May 2018, the appellant resigned from his position with the USPS, citing his "worsening medical conditions" and inability to render useful and efficient service. IAF, Tab 17 at 15. Beginning in October 2017, and continuing after his resignation, the appellant was self-employed as a part-time barber. *Id.* at 26, 29. On September 6, 2018, OPM issued a reconsideration decision affirming its initial decision. IAF, Tab 7 at 6-9. In reaching its decision, OPM found that the medical evidence provided failed to indicate any medical restrictions on the appellant's work that would render him unable to provide useful and efficient service. *Id.* at 7-8. It further found that the appellant's medical evidence failed to demonstrate that his conditions worsened while he was serving under FERS. *Id.* at 8.

¶6    The appellant appealed OPM's reconsideration decision to the Board. IAF, Tab 1. After a telephonic hearing, the administrative judge issued an initial decision affirming OPM's reconsideration decision denying the appellant's application for a FERS disability retirement annuity. IAF, Tab 21, Initial Decision (ID) at 1. The administrative judge found that the appellant failed to demonstrate how his specific symptoms rendered him unable to perform the essential functions of his job. ID at 7-9. He also concluded that the appellant failed to show by preponderant evidence that his medical conditions were incompatible with useful and efficient service or retention in his position. ID at 7.

¶7     The appellant has filed a petition for review.  Petition for Review (PFR) File, Tab 1 at 4-12.  He attaches pictures of various medications he asserts he is taking.[2]  *Id.* at 11-12, 14-19.  The agency has responded.  PFR File, Tab 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶8     In an appeal from an OPM decision denying a voluntary disability retirement application, the appellant bears the burden of proving entitlement to benefits by preponderant evidence.[3]  *Chavez v. Office of Personnel Management*, 111 M.S.P.R. 69, ¶ 6 (2009); 5 C.F.R. § 1201.56(b)(2)(ii).  To be eligible for a disability retirement annuity under FERS, an employee must show that:  (1) he completed at least 18 months of creditable civilian service; (2) while employed in a position subject to FERS, he became disabled because of a medical condition, resulting in a deficiency in performance, conduct, or attendance, or if there is no such deficiency, the disabling medical condition is incompatible with either useful and efficient service or retention in the position; (3) the disabling medical condition is expected to continue for at least 1 year from the date that the application for disability retirement benefits was filed; (4) accommodation of the disabling medical condition in the position held must be unreasonable; and (5) the employee did not decline a reasonable offer of reassignment to a vacant position.  *Chavez*, 111 M.S.P.R. 69, ¶ 6.

¶9     The record shows, and it is undisputed, that the appellant had completed more than 18 months of civilian service creditable under FERS at the time he

---

[2] The appellant submits this evidence for the first time on review.  The Board will not consider evidence submitted for the first time on review absent a showing that it is material, i.e., it is of sufficient weight to warrant an outcome different from that of the initial decision.  *Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980).  The pictures themselves do not support a basis for review because they do not demonstrate any error on the part of the administrative judge.  However, as set forth below, we reverse the initial decision on other grounds.

[3] Preponderant evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue.  5 C.F.R. § 1201.4(q).

filed his application, his medical condition continued for at least 1 year from the date of his application, and he did not decline an offer of reassignment to a vacant position. IAF, Tab 7 at 25, 74, 79, 91. Thus, the appellant's entitlement to a disability retirement annuity depends on whether he had a disabling medical condition and whether accommodation of the disabling medical condition was unreasonable.

The administrative judge incorrectly determined that the appellant failed to establish that his medical condition was disabling.

¶10    On review, the appellant argues that the medical documentation and testimony sufficiently demonstrates that his unsatisfactory conduct was the result of his medical conditions. PFR File, Tab 1 at 5-6. He also argues that he proved that his medical conditions are incompatible with useful and efficient service or retention in the position. *Id.* at 6-9. The administrative judge found that the appellant failed to demonstrate how his specific symptoms rendered him disabled under either of these alternative theories. ID at 7-9. We disagree. Because we find that the appellant proved, as discussed below, that his medical conditions were incompatible with useful and efficient service, we find it unnecessary to make a finding as to whether he connected those conditions with his poor conduct. *See Thieman v. Office of Personnel Management*, 78 M.S.P.R. 113, 116 (1998) (explaining that, after an administrative judge found an appellant did not prove that he had a conduct or attendance deficiency related to his medical conditions, the administrative judge should have addressed whether the appellant's condition was incompatible under the alternative prong regarding disability).

¶11    The second element of establishing entitlement to a disability retirement annuity requires demonstrating that the appellant's disabling medical condition either (1) caused a deficiency in performance, attendance, or conduct, or (2) is incompatible with useful and efficient service or retention in the position. 5 U.S.C. § 8451(a)(1)(B); *Jackson v. Office of Personnel Management*,

118 M.S.P.R. 6, ¶ 7 (2012).  As applicable here, under the second method, an individual can establish entitlement by showing that the medical condition is inconsistent with working in general, working in a particular line of work, or working in a particular type of setting.  *Jackson*, 118 M.S.P.R. 6, ¶ 8.  An appellant's own subjective complaints of disability and inability to work must be seriously considered, particularly when supported by competent medical evidence.  *Balmer v. Office of Personnel Management*, 99 M.S.P.R. 199, ¶ 10 (2005).  The Board has frequently stated that a physician's conclusion that an employee is disabled is persuasive only if the physician explains how the medical condition affects the employee's specific work requirements.  *Craig v. Office of Personnel Management*, 92 M.S.P.R. 449, ¶ 10 (2002).

¶12      In *Chavez*, the Board found that the appellant sufficiently demonstrated that her personality disorder and depression precluded her from performing her specific work requirements as a window clerk.  *Chavez*, 111 M.S.P.R. 69, ¶¶ 8-11.  There, the appellant's doctor noted that her conditions specifically interfered with her ability to interact appropriately with others at work, adapt to stress, and perform tasks requiring sustained concentration or an ability to organize.  *Id.*, ¶ 8.  The doctor therein further testified that the appellant's interactions with others and her cognitive functions were negatively affected in any setting involving stress or pressure.  *Id.*  The doctor's report was generally corroborated by the appellant's written statements and her supervisor's statement.  *Id.*, ¶¶ 9-10.  As such, the Board held that the appellant produced competent and unrefuted medical evidence establishing that her conditions precluded her from performing her specific work requirements, including concentration, organization, and interaction with others in any stressful environment, which was sufficient to show that she was precluded from useful and efficient service or retention in her position.  *Id.*, ¶ 11.

¶13      The record here includes a job description for the appellant's position as an MDO.  IAF, Tab 7 at 72-73.  Among other duties, the position requires the

incumbent to manage employees and on-the-job training, interact with customers to resolve problems, and meet with union representatives to resolve disagreements. *Id.* at 72. The administrative judge below found that the appellant's psychiatrist failed to sufficiently explain how the medical conditions affected the appellant's specific work requirements. ID at 8. We disagree.

¶14 The record reflects that the appellant saw his psychiatrist at least 12 times between March 2017 and April 2018. IAF, Tab 7 at 29-40. The psychiatrist diagnosed the appellant with depression, anxiety, ADD, and a probable borderline personality disorder. IAF, Tab 17 at 17, Tab 20, Hearing Compact Disc (HCD) at 44:02 (testimony of the appellant's psychiatrist). The symptoms of his conditions include "[p]eriods of depression, anxiety, mood swings, irritability, difficulty managing conflict, sensitiv[ity] to crowds, poor concentration/focus, [and] *self-harm*." IAF, Tab 17 at 18 (emphasis in original). His psychiatrist reviewed the appellant's position description for his job as an MDO and concluded that his medical conditions rendered him unable to fully perform several of the job duties. *Id.* at 19. Specifically, he found the appellant unable to manage others or train others, resolve conflicts, and maintain an inflexible schedule. *Id.* His psychiatrist testified that the appellant is susceptible to too much stress, that when under stress he loses the ability to do the basic functions of his job, and he is prone to act out due to anger issues. HCD at 50:05 (testimony of the appellant's psychiatrist). He further testified that the appellant's position had too much stress for the appellant and that managing disputes was particularly stressful. HCD at 51:44 (testimony of the appellant's psychiatrist).

¶15 The psychiatrist's treatment notes reflect that the appellant's work stress manifested itself in various ways. IAF, Tab 7 at 29-40. In one instance, the notes reflect that the appellant was stressed and upset from work to the point that he punched his own car. *Id.* at 29. The notes reflect another instance of the

appellant having to leave work due to the stress.[4]  *Id.* at 31.  His psychiatrist explained that the appellant is able to handle the low stress job of cutting hair, which does not involve managing others or resolving disputes, but cannot handle situations such as managing a labor dispute between union representatives and employees.  HCD at 1:03:12 (testimony of the appellant's psychiatrist).

¶16     The appellant himself explained how his medical conditions rendered him unable to perform specific work duties.  He stated in his disability retirement application, and also in his testimony, that he could no longer manage groups of employees, manage job training, meet with union representatives to resolve disagreements, meet with customers and major mailers to resolve problems, and generally have the patience or capability to deal with angry or upset people.  IAF, Tab 7 at 58; HCD at 9:07 (testimony of the appellant).  He described employee and union interactions as everyone "always yelling and screaming and getting in your face," which made it difficult for him to be around without "blowing up myself or wanting to walk away or do something inappropriate for the workplace."  HCD at 9:54 (testimony of the appellant).

¶17     The Supervisor's Statement accompanying the appellant's disability retirement application, completed in August 2017, additionally certified that the appellant's conduct at work had become unsatisfactory.  IAF, Tab 7 at 60.  The Supervisor's Statement explained that there "is an ongoing investigation into [the appellant's] conduct and discipline is forthcoming."  *Id.*  In October 2017, the

---

[4] To the extent the appellant's medical evidence fails to include any objective measures or tests, we find that absence not dispositive.  *See Confer v. Office of Personnel Management*, 111 M.S.P.R. 419, ¶ 18 (2009) (finding an appellant may prevail in a disability retirement application based on medical evidence that "consists of a medical professional's conclusive diagnosis, even if based primarily on his/her analysis of the applicant's own descriptions of symptoms and other indicia of disability") (quoting *Vanieken-Ryals v. Office of Personnel Management*, 508 F.3d 1034, 1041 (Fed. Cir. 2007)); *Doe v. Office of Personnel Management*, 109 M.S.P.R. 86, ¶ 17 (2008) (finding an appellant disabled based on her medical documentation, which included doctor's notes of therapy and various medications, despite the absence of objective measures and tests).

appellant received a Letter of Warning in Lieu of a 14-day Suspension for "Unacceptable Conduct – Unscheduled Absences without Leave."[5] IAF, Tab 17 at 28. The decision letter upholding the discipline warned that the appellant needed to "improve his work deficiencies or bear further consequences of his actions." *Id.* When a supervisor's statement accompanying a disability retirement application certifies that the applicant's conduct is unacceptable, the appellant must provide evidence that the disability caused the alleged misconduct. *Johnson v. Office of Personnel Management*, 87 M.S.P.R. 192, ¶¶ 14, 19 (2000). The appellant here did not explicitly state that his medical conditions caused the Letter of Warning. However, his psychiatrist stated in response to an interrogatory from the appellant that he "cannot handle inflexible full-time work" and that he is unable to work an inflexible schedule. IAF, Tab 8 at 39-40. Also, the appellant testified that his medical conditions rendered him unable to perform a full-time schedule. HCD at 9:07 (testimony of the appellant). Thus, the evidence suggests that this misconduct is in line with the appellant's assertion that his medical conditions affect his specific work requirements under the second method of proving disability.

¶18 Accordingly, we find the appellant's psychiatrist's medical documentation and testimony, combined with the other record evidence, persuasive given that it explains how the appellant's medical conditions specifically affect his work requirements. *Compare Craig*, 92 M.S.P.R. 449, ¶¶ 10-14 (finding a psychiatric social worker's conclusion of disability persuasive when it was corroborated by other evidence and the social worker tied the medical conditions to the appellant's specific work requirements), *with Cummins v. Office of Personnel Management*, 117 M.S.P.R. 261, ¶ 8 (2012) (finding an appellant failed to prove disability when her doctor testified that she was somewhat familiar with the appellant's duties but not the details of her position, and she was unwilling to

---

[5] It is unclear whether this discipline is the same discipline referenced in the Supervisor's Statement.

state that the appellant was unable to perform her duties), *and Anderson v. Office of Personnel Management*, [96 M.S.P.R. 299](), ¶¶ 14, 20 (2004) (finding the appellant's physicians' opinions regarding the appellant's disability to be unpersuasive because they did not show how her conditions affected her specific job duties and requirements), *aff'd per curiam*, 120 F. App'x 320 (Fed. Cir. 2005).

¶19    To the extent OPM suggests that the appellant is not entitled to a disability retirement annuity due to his subsequent employment as a barber, we find that argument unpersuasive. IAF, Tab 17 at 29-34. An appellant is not entitled to a disability retirement annuity when his medical condition is based on a single work environment, such as because of a personal conflict with a supervisor or from a perceived hostile work environment. *Confer v. Office of Personnel Management*, [111 M.S.P.R. 419](), ¶ 16 (2009). Subsequent work history is relevant to whether an individual's condition is confined to a single work environment. *Id.* However, the ability to work in a position with different responsibilities, and specifically in a position without the particular work requirements that the appellant could not perform, does not undermine an appellant's evidence that he is unable to work in the prior position. *See id.*, ¶¶ 12-16 (finding an appellant's subsequent work in a supervisory position in which she was never alone with patients, when being alone with patients is what triggered her symptoms, did not undermine her testimony that she was unable to work in her prior position providing direct nursing care to patients).

¶20    The appellant's psychiatrist testified that his condition is not tied to interactions with specific persons at the USPS, but rather, the managerial duties in his prior position. HCD at 1:02:50 (testimony of the appellant's psychiatrist). Moreover, he testified that the appellant is able to handle a low-stress position such as barbering, but not a more stressful managerial position handling things such as labor disputes between union representatives and employees. HCD at 1:03:12 (testimony of the appellant's psychiatrist). The appellant himself

testified that he does not have a lot of clients as a barber, the work is "really laid back," he does not deal with any confrontational situations, and if he ever does get overwhelmed he can just close the shop and go home or not go in at all. HCD at 17:07 (testimony of the appellant). Accordingly, we find that the appellant's subsequent work as a barber does not undermine his evidence that he is unable to perform the specific work requirements of his prior position as an MDO.

¶21 Finally, the administrative judge here found that the appellant failed to demonstrate that he was unable to manage his condition through medication, occasional time off from work, or mental health counseling. ID at 8. We disagree. An applicant for disability retirement must establish the extent to which his disability can or cannot be controlled. *Smedley v. Office of Personnel Management*, 108 M.S.P.R. 31, ¶ 23 (2008). When an appellant fails or refuses to follow or accept normal treatment, his disability flows not from the disease or injury itself, as the statute requires, but from his voluntary failure or refusal to take the available corrective or ameliorative action. *Id.* Here, the appellant's psychiatrist responded in the affirmative to an interrogatory from the appellant that he was "compliant with all reasonable prescribed medical treatment regarding his diagnosed conditions." IAF, Tab 17 at 20.

¶22 Moreover, the psychiatrist testified that, despite the appellant taking numerous medications to treat his medical conditions, those conditions were not controlled. HCD at 1:05:25 (testimony of the appellant's psychiatrist). He further testified that they would frequently tweak the appellant's medications in attempts to control his condition, to no avail. HCD at 1:05:50 (testimony of the appellant's psychiatrist). Although the psychiatrist testified that the appellant could benefit from mental health counseling, he stated that he did not believe that would render the appellant capable of returning to his prior position, observing that counseling in these situations can take several years. HCD at 1:07:27 (testimony of the appellant's psychiatrist). There is no evidence that the

appellant ever refused counseling. HCD at 1:07:54 (testimony of the appellant's psychiatrist). Accordingly, we find that the appellant has followed and accepted normal treatment but remains unable to control his medical conditions such that he cannot return to his prior position.

¶23     In light of the evidence discussed above, we find that the appellant has produced competent and unrefuted medical evidence establishing that his conditions preclude him from performing specific work requirements including managing small- to medium-sized groups of employees, managing job training, and resolving problems/disagreements with both customers and union representatives. *See Doe v. Office of Personnel Management*, 109 M.S.P.R. 86, ¶ 18 (2008) (finding disability retirement warranted based on a mental condition exacerbated by job-related stress that prevented the appellant from performing the duties of her position). Moreover, although absences from work do not conclusively establish that an employee is incapable of rendering useful and efficient service, they are nonetheless a factor worthy of consideration in judging disability. *Henderson v. Office of Personnel Management*, 117 M.S.P.R. 313, ¶ 25 (2012). Based on the evidence from the appellant's psychiatrist and his supervisor, and on his own subjective description of his inability to work, we find that the administrative judge erred in finding that the appellant did not prove by preponderant evidence that he is precluded from useful and efficient service or retention in his position.

The appellant established that accommodation of the disabling medical condition is unreasonable.

¶24     The administrative judge made no findings as to whether accommodation of the appellant was unreasonable. The fourth element of establishing entitlement to a disability retirement annuity requires an appellant to prove that accommodation of his disabling medical condition is unreasonable. *Chavez*, 111 M.S.P.R. 69, ¶ 13. When an agency certification that accommodation is unavailable is unrebutted and the record supports the conclusion that accommodation would not

be possible, the Board has held that this criterion for obtaining disability retirement is met.[6] *Id.*, ¶ 15.

In this case, the USPS certified that accommodation of the appellant was not possible, due to the severity of his condition and the requirements of his position. IAF, Tab 7 at 74-75. This certification is not challenged by OPM. Moreover, the record supports the conclusion that the appellant cannot perform the MDO duties, even with accommodation. IAF, Tab 7 at 58, 72, Tab 17 at 19. As such, we find that accommodation of his disabling medical condition is unreasonable.

The appellant has therefore met all the criteria for disability retirement under FERS and is entitled to a disability retirement annuity. Accordingly, we reverse the initial decision and do not sustain OPM's reconsideration decision.

**ORDER**

We ORDER OPM to award the appellant a disability retirement annuity. OPM must complete this action no later than 20 days after the date of this decision.

We also ORDER OPM to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. We ORDER the appellant to provide all necessary information OPM requests to help it carry out the Board's Order. The appellant, if not notified, should ask OPM about its progress. *See* 5 C.F.R. § 1201.181(b).

---

[6] OPM suggested below that, in addition to proving his accommodation was unreasonable, the appellant must also prove that his employing agency was unable to "reassign him to a vacant position at the same grade or level at the position he last occupied." IAF, Tab 17 at 5. However, as our reviewing court held in *Gooden v. Office of Personnel Management*, 471 F.3d 1275, 1280 (Fed. Cir. 2006), the inquiry into whether an appellant is qualified for reassignment to a vacant position is required only by the Civil Service Retirement System, not FERS. Under FERS, the only requirement regarding a reassignment is that the appellant must not have declined a reasonable offer of reassignment. *Id.*

¶29    No later than 30 days after OPM tells the appellant it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that OPM did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes OPM has not fully carried out the Board's Order, and should include the dates and results of any communications with OPM.  *See* 5 C.F.R. § 1201.182(a).

¶30    This is the final decision of the Merit Systems Protection Board in this appeal.  5 C.F.R. § 1201.113(c).

### NOTICE TO THE APPELLANT REGARDING
### YOUR RIGHT TO REQUEST
### ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set out at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

### NOTICE OF APPEAL RIGHTS[7]

You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most

---

[7] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation

for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and you wish to challenge the Board's rulings on <u>your whistleblower claims only, excluding all other issues</u>, then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[8]  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[8]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115 -195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                    /s/ for
                                  _____
                                  Jennifer Everling
                                  Acting Clerk of the Board
Washington, D.C.